UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHINA CINDA ASSET MANAGEMENT CO. LTD.,

Plaintiff,

v.

XIAOFENG PENG, et al.,

Defendants.

Case No. 4:25-cv-06047-KAW

**ORDER GRANTING DEFENDANTS' REQUEST FOR RELIEF UNDER RULE 56(D) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 57, 58

In this action to enforce three foreign judgments, Plaintiff China Cinda Asset Management Co., Ltd. (Jiangxi Branch) moves for summary judgment. (Pl.'s Mot., Dkt. No. 57.) In response, Defendants Xiofeng Peng and Shan Zhou[1] seek relief under Federal Rule of Civil Procedure 56(d). (Defs.' Opp'n, Dkt. No. 58.)

On October 15, 2026, the Court held a hearing, and, based on the arguments presented in the briefing and at oral argument, the Court GRANTS Defendants' request for Rule 56(d) relief and DENIES Plaintiff's motion for summary judgment without prejudice.

## I. RELEVANT BACKGROUND

### A. Factual Background

On January 22, 2015, Defendant Xiaofeng Peng signed Maximum Guarantee Contracts with CITIC Bank to personally guarantee loans for nonparty Saiwei LDK Solar Hi-Tech (Xinyu) Co., Ltd. ("Saiwei Xinyu"), Saiwei LDK Solar Hi-Tech (Nanchang) Co., Ltd. ("Saiwei Nanchang"), and Jiangxi Saiwei LDK Solar Energy High-Tech Co., Ltd. ("Saiwei Hi-Tech") from

[1] Defendant Zhou is named because she is Defendant Peng's wife, and Plaintiff seeks to collect from Defendants' community estate. (*See* Pl.'s Mot. at 22.) Plaintiff is not seeking to encumber Defendant Zhou's separate property. (Pl.'s Reply, Dkt. No. 60 at 16.)

United States District Court
Northern District of California

CITIC Bank. (Decl. of Jianghuai Bai, "Bai Decl.," Dkt. No. 57-1 ¶¶ 2-4, Exs. B-D.) The original loan term ran from January 22, 2015 to July 21, 2015 and was extended to January 20, 2016 by RMB Loan Extension Contracts signed before the original maturity dates. (Bai Decl. ¶¶ 2-3.) The original borrowers did not repay the loans at maturity, and Defendant Peng did not perform his obligations under the guarantees. (Bai Decl. ¶ 8.) During the extension term, Saiwei Xinyu, Saiwei Nanchang, Saiwei Hi-Tech, and a fourth guarantor, Jiangxi Saiwei LDK Solar Silicon Technology Co., Ltd., entered bankruptcy reorganization proceedings, in which CITIC Bank declared its creditor's rights and recovered a portion of the debts. (Bai Decl. ¶¶ 8, 12.)

In 2017 and 2018, CITIC Bank filed three lawsuits in the People's Republic of China ("PRC") against Mr. Peng on his guarantees. (Bai Decl. ¶ 9[2].) In all cases, Defendant Peng was served by publication after personal service was unsuccessful. (Bai Decl. ¶¶ 10-11, Exs. E-G.) Defendant Peng did not appear, so the courts held public hearings and decided the cases in absentia in accordance with Chinese procedural law, and judgment were entered against him. (Bai Decl. ¶¶ 13-15; Exs. H-J.) On November 1, 2017, September 26, 2018, and September 30, 2018, the judgments were served on Defendant Peng by publication. (Bai Decl. ¶¶ 16-18, Exs. K-M.) None of the defendants appealed any of the three judgments. (Bai Decl. ¶ 20.)

On June 25, 2023, CITIC Bank and Plaintiff China Cinda Asset Management Co., Ltd. (Jiangxi Branch) signed the Creditor's Rights Transfer Agreement, together with Single-Account Creditor's Rights Transfer Agreements for each of the three accounts, transferring to Plaintiff all of CITIC Bank's creditor's rights against the debtors and guarantors. (Bai Decl. ¶ 21; Exs. N-P.) According to the transfer agreements, as of February 10, 2023, the outstanding balances of the three judgments were as follows: under the No. 44 Judgment, principal of RMB 38,258,851.97 and accrued interest of RMB 27,550,310.90; under the No. 249 Judgment, principal of RMB 29,999,857.05 and accrued interest of RMB 19,665,004.85; and under the No. 248 Judgment, principal of RMB 29,129,852.45 and accrued interest of RMB 19,091,225.01. (Bai Decl. ¶¶ 24-26;

[2] Plaintiff's motion cites to the Bai declaration and exhibits contained in the "compendium of evidence," but the paragraphs cited, for the most part, do not cite to the relevant exhibits. The Court trusts that any future motion for summary judgment will include supporting declarations that cite to the relevant exhibits, so it is clear to which documents the declarant is referring.

Exs. N, O, P.) The outstanding balances were credited the amounts recovered through the Saiwei entities' bankruptcy reorganization proceedings. (Bai Decl. ¶ 23.) Additionally, the transferred amount includes the expenses incurred for realizing the creditor's rights, which totaled RMB 1,187,964.55 for the three judgments. (Bai Decl. ¶¶ 24-26; Exs. N, O, P.)

Since acquiring the creditor's rights, Plaintiff has not received any payment from Defendants on the three judgments. (Bai Decl. ¶ 28.)

### B. Procedural Background

Plaintiff filed this action on July 17, 2025, seeking recognition of three money judgments entered by courts of the People's Republic of China in 2017 and 2018. (*See* Compl., Dkt. No. 1.) On October 24, 2025, the Court issued the case management scheduling order, and set the non-expert discovery cut-off for October 21, 2026, expert disclosures for January 19, 2027, expert discovery cut-off for April 5, 2027, and a bench trial on October 18, 2027. (Dkt. No. 24 at 7-8.)

On September 8, 2026—six weeks prior to the close of fact discovery—Plaintiff filed the motion for summary judgment. (Pl.'s Mot., Dkt. No. 57.) On September 22, 2026, Defendants filed an opposition and requested that the Court deny or defer ruling on the motion so they can obtain necessary discovery pursuant to Federal Rule of Civil Procedure 56(d). (Defs.' Opp'n, Dkt. No. 28.) On September 29, 2026, Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 60.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(d) allows the nonmoving party to request additional time to take discovery necessary to oppose a motion for summary judgment. Rule 56 provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The purpose of Rule 56(d) relief is to prevent the nonmoving party from being 'railroaded' by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery." *Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986)); *see also Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751 (9th Cir. 2001) ("Rule 56[d] thus protects parties from a premature grant of summary judgment.").

The party seeking Rule 56(d) relief bears the burden of demonstrating, in affidavit or declaration, (1) the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule 56([d]) must identify by affidavit [or declaration] the specific facts that further discovery would reveal and explain why those facts would preclude summary judgment."); Fed. R. Civ. P. 56(d) (permitting affidavit or declaration).

Rule 56(d) motions are "generous[ly]" granted unless it is "the object of mere speculation" that the evidence sought exists, such evidence would be immaterial to summary judgment, or the party seeking relief "has not diligently pursued discovery of the evidence." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773–74 (9th Cir. 2003) (citations omitted); *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (citations omitted).

## III. DISCUSSION

Plaintiff moves for summary judgment to convert the foreign judgments into U.S. judgments. (Pl.'s Mot. at 23.) In the alternative to opposing the motion for summary judgment, Defendants requests that the Court defer or deny the motion under Rule 56(d), so that they may have an opportunity to seek the discovery necessary to oppose Plaintiff's motion for summary judgment. (Defs.' Opp'n at 10.)

In international enforcement actions, "enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1212 (9th Cir. 2006) (en banc) (per curiam) ("*Yahoo! II*") (plurality opinion) (citing *Bank of Montreal v. Kough,* 612 F.2d 467, 469–70 (9th Cir.1980)). In California, the Uniform Foreign-Country Money Judgments

Recognition Act ("Uniform Act") regulates enforcement of the damages award at issue here. *See* Cal. Civ. Proc. Code §§ 1713–1724. Under the Uniform Act, the party seeking enforcement of a foreign judgment bears the initial burden of establishing that the judgment falls within the scope of the Act. *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 991 (9th Cir. 2013) (citing Cal. Civ. Proc. Code § 1715(c)).

Here, the parties dispute that the judgment conforms to the threshold requirements for recognition. Under California law, a foreign judgment is recognized if 1) it grants recovery of a sum of money, 2) it is final, conclusive and enforceable under the law of the country rendered; and 3) it is not a judgment for taxes, a fine or other penalty, or a judgment in connection with domestic relations. Cal. Civ. Proc. Code §§ 1715(a)-(b). Only the first two requirements are at issue.

**A. Recovery of a sum of money**

While Defendants do not dispute that the foreign judgments grant recovery of a sum of money, as required by § 1715(a)(1), the amount owed is uncertain, because Plaintiff does not provide sufficient documentation to support the balance owed on judgments that are almost a decade old, and the calculations are not based on the actual judgments themselves. (*See* Def.'s Mot. at 5-6.) Rather, Plaintiff relies on unauthenticated documents that appear to be transfer agreements, dated February 10, 2023, between the original creditor and Plaintiff that assigned the right to collect on the three judgments to Plaintiff. (*See* Bai Decl. ¶¶ 43, Exs. N-P.[3]) This does not mean that the amounts stated in these transfer documents are accurate or the documents themselves admissible, because the supporting Bai declaration provides no foundation. *See ids.*

Furthermore, Plaintiff acknowledges that the borrowers' bankruptcy proceedings resulted in partial recoveries, but Plaintiff relies entirely on the same "Single-Account Creditor's Rights Transfer Agreements[, which] expressly identify the remaining creditor's rights as of the February 10, 2023 transfer base date, separately stating the outstanding loan principal, interest, and expenses incurred in realizing the creditor's rights for each account." (Pl.'s Mot. at 11 (citing Bai Decl. ¶¶ 24–26; Exs. N–P).)

[3] The Bai declaration appears to address these documents earlier in the declaration, but they are not identified by marked exhibit letter. (*See* Bai Decl. ¶¶ 24-26.)

The Court notes that the computation of the outstanding balance owed is being made by Plaintiff's counsel, Han Lin, based on the three transfer agreements, rather than on the original judgments, despite Mr. Lin's declaration stating that he used the original judgments to make the calculations. (*Compare* Lin Decl. ¶ 1 (stating reliance on the three judgments), *with* Lin Decl. ¶ 2 (used the three transfer documents to establish the outstanding balances).)

Understandably, Defendants seek discovery on the transfer agreements, including what rights were transferred, whether the transfer was effective under PRC law, and whether notice was given as PRC law requires. (Decl. of Matthew B. Hodroff, "Hodroff Decl.," Dkt. No. 58-1 ¶ 9.) Defendants also seek discovery on the partial recoveries from the bankruptcy proceedings and how those amounts were credited, as well as how damages were calculated. (Hodroff Decl. ¶¶ 10-11.) This includes the underlying account records referenced in the supporting declaration that have not been produced, information on the custodian and origin of those records, "the derivation of the delayed-performance start dates of January 24, 2018, December 11, 2018, and December 20, 2018, the use of a 360-day divisor with actual elapsed day counts, and the selection of historical exchange rates from 2017 and 2018 to convert balances accrued through October 15, 2026." (Hodroff Decl. ¶ 11.)

It is telling that Plaintiff revised the damages calculation in its reply. (Pl.'s Reply at 9-10.) The Court notes that the revised calculation was not accompanied by a supporting declaration, which is a problem unto itself. *See id.*[4]

To the extent that Plaintiff attempts to convert the judgments into U.S. dollars, this is unlawful under California Code of Civil Procedure § 676.7(b), which provides that "[a] judgment or award on a foreign-money claim is payable in that foreign money or, at the option of the debtor, in the amount of United States dollars which will purchase that foreign money on the conversion date at a bank-offered spot rate." In reply, Plaintiff concedes that the judgment should be stated in renminbi (yuan), or at the debtor's option, in U.S. dollars. (Pl.'s Reply at 11-12.)

---

[4] Given the complicated nature of this case, and the large amount of money purportedly owed, it would be preferable to have a retained expert provide the damages calculation, rather than counsel of record. (*See* Lin Decl. ¶¶ 2-10.) Despite Plaintiff's argument in reply, given all of the intervening factors, this is not simple arithmetic. (*See* Pl.'s Reply at 8.)

**B. Whether the judgments are enforceable**

More importantly, Plaintiff has not established that the judgments remain enforceable in the PRC, as required by § 1715(a)(2).

Defendants contend that expert evidence on PRC law is necessary to determine whether the judgments are enforceable because an action to recognize a foreign-county judgment must "be commenced within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 10 years from the date that the foreign-country judgment became effective in the foreign country." Cal. Civ. Proc. Code § 1721. Defendants explain that the relevant PRC law sets the period to apply for enforcement as two years, and "Plaintiff's own declarant uses dates that, on his theory of delayed-performance interest, can only mark the expiration of each judgment's performance period: January 24, 2018, for the No. 44 Judgment; December 11, 2018, for the No. 248 Judgment; and December 20, 2018, for the No. 249 Judgment." (Defs.' Opp'n at 8 (citing Lin Decl. ¶¶ 6-8).)

In reply, Plaintiff argues that PRC law makes the two-year period subject to suspension and interruption and that the lapse of a limitation period does not extinguish the underlying right. (Pl.'s Reply at 5.) Plaintiff further argues that § 1721 does not incorporate the PRC application period at all, and that "[a] PRC judgment that has taken legal effect remains effective; the application period limits only a procedural remedy." (Pl.'s Reply at 6.) Plaintiff then complains that Defendants cited no legal authority to the contrary. *Id.* Plaintiff, however, bears the burden of showing that the judgments remain enforceable pursuant to California Code of Civil Procedure § 1715(c), because enforceability is a threshold issue. Despite this burden, Plaintiff provides no legal authority to assist the Court in resolving this issue.

Plaintiff also argues that Defendants bear the burden on showing that the judgments are not enforceable, because they are arguing a statute of limitations defense, but Plaintiff is mistaken, because, again, § 1715(c) puts the burden on establishing enforceability on the party seeking recognition. (*See* Pl.'s Reply at 6.) For that reason, Plaintiff's argument that Defendants bear the burden of showing evidence of unenforceability is unavailing. *See id.* Also, Defendants have shown that additional discovery on enforceability is essential to opposing a motion for summary

United States District Court
Northern District of California

judgment, because this is a threshold issue.

Finally, Defendants seek discovery on the circumstances of the service by publication in the three underlying cases, including the efforts that preceded it and what the respective publications disclosed, because this information is essential to a nonrecognition defense under California Code of Civil Procedure § 1716. (Hodroff Decl. ¶ 13.)

Accordingly, Defendants have sufficiently identified existing facts they hope to elicit from further discovery and that those sought-after facts are essential to oppose summary judgment. Moreover, the uncertainty regarding enforceability prevents the Court from granting partial summary judgment on the recognition of the foreign judgments, so Plaintiff's request made in reply is denied. (*See* Pl.'s Reply at 11.)

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for relief under Rule 56(d) is GRANTED. Given the potential breadth of new discovery, and the deficiencies noted in Plaintiff's motion for summary judgment and supporting evidence, merely deferring judgment is not practical under the circumstances, so the motion is DENIED WITHOUT PREJUDICE. Given the need engage in expert evidence regarding the law of the People's Republic of China and the amount of the judgments that remain both outstanding and enforceable, Plaintiff may renew its motion for summary judgment after the close of expert discovery.[5]

Finally, the Court extends the non-expert discovery cut-off to November 30, 2026.

IT IS SO ORDERED.

Dated: October 15, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

[5] While expert discovery is typically not required to address timeliness, this case involves foreign law that may require expert evidence in the application of the law of the People's Republic of China, because PRC law and legal authority is not readily accessible to the undersigned.